## MAITLAND *v.* SLUTSKY.

1. GOOD WILL—NATURE—INCIDENT TO OTHER PROPERTY RIGHTS.

   Good will exists as property merely as an incident to other property rights and is not susceptible of being owned and disposed of separately and apart from the property right to which it is incident.

2. SAME—ADHERENCE TO PLACE, NAME, PROPERTY OR BUSINESS.

   Although not necessarily dependent upon locality, good will may be attached to the particular place where the business is being conducted and it may adhere to some other principal thing, such as the reputation acquired by an established business, the tangible assets of a trade, the right to use a particular name, trade-mark, or valuable trade secret.

3. SAME—INCIDENT OF A GOING CONCERN.

   Good will is tangible only as an incident, as connected with a going concern or business having locality or name, and is not susceptible of being disposed of independently.

4. FRAUDULENT CONVEYANCES—GOOD WILL.

   In suit by receiver of former owner and conductor of a rendering business who had lost the real and personal property thereof through foreclosure of mortgages, plaintiff *held,* not entitled to have declared void as to such former owner's creditors contract, made about a year after loss of the business prop-

erty, whereby he, his wife and daughter for separate considerations, sold good will to a corporation which had purchased the property, the good will under consideration not being a property right subject to claims of creditors.

Appeal from St. Clair; George (Fred W.), J. Submitted October 7, 1937. (Docket No. 71, Calendar No. 39,668.) Decided November 10, 1937.

Bill by Harry W. Maitland, receiver of Ben Slutsky, against Fay Slutsky, Pearl Slutsky and Valley Chemical Company, a Michigan corporation, to set aside the terms of a contract and for other relief. Decree for plaintiff. Defendants appeal. Reversed.

*Walsh, Walsh & O'Sullivan,* for plaintiff.

*Allan Sloan,* for defendants Slutsky.

*Gregory W. Bryan,* for defendant company.

FEAD, C. J. For some 14 years Ben Slutsky, for a time with a partner and later alone, owned and conducted the Port Huron Rendering Company, operating generally through the thumb district. The business telephone was in the home and was attended by Slutsky's wife, Fay, and daughter, Pearl, who thus had contact with farmers and telephone operators, of value to the business, particularly by way of obtaining free carcasses.

In 1934 Slutsky lost his business real estate through foreclosure of real estate mortgage and his machinery and equipment through foreclosure of chattel mortgage.

In October, 1934, the Star Oil Company, Inc., bought the property and employed Ben as manager, at a salary of $25 per week and 40 per cent of the net profits, for an indeterminate period, terminable

by either party on 30 days' notice. The plant was called the Port Huron Rendering Branch.

In October, 1935, the Valley Chemical Company purchased the property and entered into the contract in issue here. The contract was with Ben, Fay and Pearl, and recited that the company desired to purchase "their good will in the rendering business," and agreed to employ Ben and Fay for one year, with possible second year, at a salary of $25 per week each, but if either should die the survivor was to receive $50 per week; the sale portion read:

"It is further understood and agreed that parties of the second part do hereby sell and convey unto the party of the first part their good will in the rendering business and the use of the name Port Huron Rendering Company, if they desire, and the party of the first part agrees to pay to parties of the second part, within one year, or as otherwise herein provided, for such good will as follows" to Fay $3,000, to Pearl $1,000, to Ben $1,000.

It was also provided that if the company desired to re-employ Ben and Fay for an additional period of one year "this good will consideration of $5,000 will not have to be paid until the end of the second year;" if the company dispensed with the services of either Ben or Fay before the expiration of the period for which hired it was to pay Fay the balance of the salary that would be due for the unpaid term as an additional amount for her good will; and

"In consideration of the money so to be paid by the party of the first part to parties of the second part, the parties of the second part agree and do hereby convey to party of the first part all of their good will in the rendering business in the city of Port Huron and other territory in the United States within the radius of 150 miles thereof, such good will being for a period of seven years from and after this

date. The parties of the second part do hereby agree not to directly or indirectly engage in the rendering business in said territory for said term of seven years."

After judgment for $3,867.73 in favor of the First National Trust & Savings Bank on a debt existing when the Valley Chemical Company contract was made, plaintiff was appointed receiver of Ben Slutsky in proceedings at law in the nature of judgment creditor's bill. Plaintiff filed this bill, alleging that Ben Slutsky was equitably entitled to all the proceeds of the sale of the good will to the Valley Chemical Company, that the agreement to pay Fay and Pearl was without consideration, and it was fraudulent and void as to creditors.

The court gave plaintiff decree declaring the agreement a fraudulent conveyance and requiring the Valley Chemical Company to pay the $5,000 to the receiver when due and payable.

The contract is peculiar. Plaintiff presented no evidence of the circumstances surrounding its execution or the reason for its terms. The oral testimony was confined to showing that Fay and Pearl had paid no consideration to Ben for the contract, nor to the Valley Chemical Company except sale of their good will, and that Fay and Pearl had had experience and contacts of value to the rendering business, although it also appears that Pearl had been working for other concerns for some years. No evidence was presented of the relative worth of the "good will" of Ben, Fay and Pearl, or the occasion for the respective amounts allotted to them.

Plaintiff rests his case wholly upon the contention that Ben Slutsky had a property right of good will which he sold to the Valley Chemical Company, and that, without consideration to him, the sale price was diverted in part to the wife and daughter. This

contention assumes without proof thereof that Ben furnished the whole consideration for the $5,000 to be paid because he was the sole owner of the original business of the Port Huron Rendering Company, although his wife and daughter were sufficiently connected with his business as employees to afford a valid reason for their being made parties to the contract, *Arctic Dairy Co.* v. *Winans,* 267 Mich. 80 (94 A. L. R. 334), and to support payment to them of a reasonable sum. It may well be doubted whether the testimony was sufficient to enable the court to make an equitable distribution of the purchase price, even though the $5,000 represented the sale of a property right of good will.

Plaintiff's position also presupposes that before the sale Slutsky had a property right of good will which a court of law or equity could have laid hands upon, transferred to another and assured its enjoyment to the taker. Passing the question of the right of creditors to reach the good will of a business by action or suit (Ann. Cas. 1914 B, 961), did Slutsky have such a property right?

Plaintiff cites no authority that a property right of good will can exist apart from other property. Aside from exceptional circumstances as, for example, trade-marks and trade-names, *Tennant* v. *Dunlop,* 97 Va. 234 (33 S. E. 620), the rule, as stated in 28 C. J. p. 731, cited by plaintiff, is:

"Good will exists as property merely as an incident to other property rights and is not susceptible of being owned and disposed of separately and apart from the property right to which it is incident. Good will may be attached to the particular place where the business is conducted; it is not, however, necessarily dependent upon locality, and it may adhere to some other principal thing, such as the reputation acquired by an established business, the

tangible assets of a trade, the right to use a particular name, trade-mark, or valuable trade secret."

And in 12 R. C. L. p. 979:

"But it should be noted that the good will of a business is not of itself property but is only an incident that may attach to or be connected with property, and that it is not susceptible of being disposed of independently of the other assets of the business, or separable from the business of which it is a part."

See, also, *People, ex rel. A. J. Johnson Co.,* v. *Roberts,* 159 N. Y. 70 (53 N. E. 685, 45 L. R. A. 126); *Red Wing Malting Co.* v. *Willcuts* (C. C. A.), 15 Fed. (2d) 626 (49 A. L. R. 459).

In *Metropolitan Bank* v. *St. Louis Dispatch Co.,* 149 U. S. 436, 446 (13 Sup. Ct. 944), the court said:

"Undoubtedly good will is in many cases a valuable thing although there is difficulty in deciding accurately what is included under the term. It is tangible only as an incident, as connected with a going concern or business having locality or name, and is not susceptible of being disposed of independently."

In *Grand Rapids Trust Co.* v. *Haney School Furniture Co.,* 221 Mich. 487 (27 A. L. R. 1020), a corporate charter had expired by limitation and plaintiff was appointed receiver. Later defendant was organized as a corporation with the same name as the defunct entity. Plaintiff sought injunction to restrain defendant from using the name on the ground that the name and good will were assets belonging to the creditors of the defunct corporation. The court said:

"The old corporation no longer exists for any business purpose. Therefore, it can possess no good

will because it can render no service to those entertaining a liking for its former products. Good will cannot exist without a going concern with a business capable of being continued to supply the wants of customers who have formed a liking for its output and management. There must be a running plant and the probable retention of customers to constitute good will. We recognize the value of good will to a going business, and its value as an asset in case of sale of such a business, but we cannot extend the holdings with reference to such recognized value to a business terminated by operation of law.''

As Slutsky had neither rendering property nor business of his own when the contract was made (and had had neither for a year), it is evident that what was attempted to be sold as good will to the Valley Chemical Company was not a property right but some personal benefit, advantage or asset. The only phase of the contract which resembled the sale of a property right of good will was permission to use the name under which Slutsky had transacted his business. But aside from the fact that it was not a trade-name nor was it shown that Slutsky still had exclusive right to use it as an assumed name, permission to use the name was merely one of several elements making up the thing sold and its value was not apportioned nor shown.

We are constrained to hold that the ''good will'' mentioned in the contract was not a property right subject to the claims of creditors and, consequently, the sale price thereof cannot be impounded for their benefit under the record here made.

Reversed and bill dismissed, with costs.

North, Wiest, Butzel, Bushnell, Sharpe, Potter, and Chandler, JJ., concurred.