LESTER K. STRIKER,
Plaintiff,

*vs.*

LOUIS CHESLER ET AL.,
Defendants.

*New Castle, February 17, 1966.*

*William E. Taylor, Jr.,* Wilmington, and *Sidney L. Garwin,* New York City, for plaintiff.

*John P. Sinclair,* of Berl, Potter & Anderson, Wilmington, and *Milton Pollack,* New York City, for defendants Donnell & Mudge, Ltd.

*Irving Morris,* of Cohen, Morris & Rosenthal, of Wilmington, and *Milton Paulsen,* New York City, for defendants Louis Chesler, Lloyd Frank and Maxwell Goldhar.

*John P. Sinclair,* of Berl, Potter & Anderson, Wilmington, and *Simon Rose,* of Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for defendant Associated Artists Production Corp.

*Howard M. Handelman,* of Bayard, Brill, Russell & Handelman, Wilmington, for appearing trustees of Ridgeway Corp.

MARVEL, Vice Chancellor: The matter now before the Court for decision is a motion filed on behalf of former directors of a dissolved corporation known as Ridgeway Corporation. They make such motion in their capacity as statutory trustees under Michigan law. Such motion principally seeks to have the status of said trustees, who are J. Bradley Streit and R. C. Faber, changed from that of parties defendant to parties plaintiff in this derivative action instituted on behalf of Ridgeway Corporation. Such motion also asks that the name of J. A. Hackett as a trustee of Ridgeway Corporation be deleted from the action, he now being deceased.

The original plaintiff in this proceeding, one Lester K. Striker, whose complaint alleged that he had been a stockholder of Ridgeway since May, 1956, filed this action on June 4, 1957 in the right of the corporation and for its benefit, alleging that "* * * Institution of this action by the present Ridgeway directors would place it (the action) in hostile hands and prevent its effective prosecution since said directors are defendants in this action." Relief in the form of an accounting, the impressing of a trust for the benefit of Ridgeway on the assets of certain of the other corporate defendants and the dissolution of Ridgeway was prayed for. Delaware rather than Michigan, the state of Ridgeway's incorporation, was apparently selected by plaintiff as the forum for his suit because a number of the defendants whom he charged with wrongdoing at Ridgeway's expense were either subject to service of process or could reasonably be expected to appear and defend themselves in Delaware. Ridgeway, however, was not amenable to process in Delaware although upon the filing of the complaint a subpoena issued against such defendant as a matter of course. Such writ was returned *non est inventus* on June 6, 1957. On June 27, 1957, Ridgeway, which had not voluntarily appeared in this action in the meantime,

was dissolved, and its directors then in office, who at the time were apparently seven in number, became trustees of the property of such corporation by operation of law. See *General Corporation Act of Michigan,* § 450.74a.

The complaint herein, as originally drawn, levelled one general set of charges of breach of fiduciary duty against the Goldhar group of directors allegedly controlled by the defendants Goldhar, Chesler and Gardiner, who were in office at the time plaintiff became a stockholder of Ridgeway and who continued to serve as corporate directors until September 28, 1956. A second set of charges, which was later dismissed, was directed against the succeeding directors of Ridgeway who took office on and after September 28, 1956. Included in this category of defendants were the two persons who make the present motion as corporate trustees. In the case of both sets of charges, corporations in which the named directors were interested and which were allegedly used to benefit the individual defendants at Ridgeway's expense were also named as defendants.

The pending motion bears directly on a critical issue scheduled to be tried at a forthcoming hearing, namely, whether or not· plaintiff, in bringing this action to enforce an alleged secondary right, was legally justified in failing to set forth in his complaint with particularity his efforts to secure such action as he desired from the managing directors of Ridgeway, *Rule 23*(d) of the *Delaware Court of Chancery, Del.C.Ann.* In other words, if Ridgeway Corporation's motion to be aligned as plaintiff were now to be granted there will be no need at the forthcoming hearing to delve into the plaintiff Striker's reasons for not making an effort to secure from Ridgeway's board the corrective action desired by him. In approaching the problem presented I consider it necessary to review in broad outline the course of this long-pending litigation.

The first action taken in this proceeding following its initiation was the prompt filing of motions to dismiss the complaint under *Rule* 12(b) for lack of jurisdiction over an allegedly necessary party, namely the non-appearing Ridgeway Corporation. Included among those making such motions were four of the directors of

Ridgeway in office on the date suit was filed, they being numbered among the defendants against whom relief was then sought. It should be noted, however, that these four directors as of the time suit was filed, who were charged in the complaint with having taken part in actions injurious to Ridgeway, did not by their August 2, 1957 appearance purport to act in any capacity other than as individual corporate directors charged with various breaches of their fiduciary duty to their corporation. In other words, at the time of such individuals' August 1957 personal appearance they did not cause the appearance of their corporation which by then had been dissolved.

Thereafter, the case lay virtually dormant until the jurisdictional question raised by the motions above referred to was briefed and argued during the spring of 1960, plaintiff at the time taking the position that such motions should be denied because among other reasons "* * * the trustees of this defunct corporation (Ridgeway) who are before this Court seek to use their control of the defunct corporation to prevent prosecution of the action against themselves and the corporations in which they have some financial interest."

On June 7, 1960 (see opinion in 161 A.2d 576), this Court, after indicating that Ridgeway would normally be considered an indispensable party to a derivative action brought for its alleged benefit, pointed out that no attempt had apparently been made either to serve such corporation at its domicile in Michigan or to have an appropriate court at such domicile order its appearance in Delaware. Anticipating that some effort would be made to bring about such an appearance in Delaware, defendants' motions were denied without prejudice insofar as they sought dismissal of this action on the grounds of lack of jurisdiction over the defendant Ridgeway.

Following the noticing of certain depositions by the plaintiff, the named defendant Donnell & Mudge, Limited entered a general appearance herein after sequestration of Delaware property owned by it. However, for approximately a year thereafter no action was taken in the case apart from disputes over the proposed taking of the defendant Chesler's deposition, until on October 31, 1961, plaintiff

asked that the case be set down for trial. Such move immediately revived defendants' interest in their earlier motions to dismiss, it being argued that no effort having been made to bring in Ridgeway as a party, notwithstanding the views expressed in the Court's opinion of June 7, 1960, that the complaint must be dismissed.

Thereafter, on November 16, 1962, a controversial stipulation was entered into, signed by counsel for plaintiff, by counsel for eight of the directors of Ridgeway in office after September 28, 1956, and for two of the corporate defendants, namely Florida Canada Corporation and Yellowknife Bear Mines, Limited, and by counsel for three alleged director-trustees of the dissolved Ridgeway Corporation and the corporation itself. Such stipulation was supported by an affidavit of counsel for plaintiff to the effect that he did not believe that Ridgeway could secure a recovery against those corporations in which the new directors of Ridgeway were interested or against the new directors themselves as to any of the series of transactions referred to in the complaint occurring after September 28, 1956, the date on which such new directors took office. The stipulation was approved by this Court on January 14, 1963, and this action was thus terminated as to the plaintiff insofar as he sought relief against corporate defendants named in the order as well as the eight former directors of Ridgeway in office on the date suit was filed, said persons being J. Bradley Streit, J. H. Buchanan, Max Orovitz, J. A. Hackett, Erskine R. E. Carter, Hubert E. Howard, Dan B. Ruskin and R. C. Faber. Such stipulation and order also added as parties defendant three of the four alleged trustees of Ridgeway above named, solely as trustees of Ridgeway Corporation, such trustees being J. Bradley Streit, J. A. Hackett and R. C. Faber.

An amended complaint having next been filed, the three appearing trustees of Ridgeway by answer filed on February 1, 1963 purportedly submitted themselves to the jurisdiction of the Court for such action as the Court should deem just and equitable. These appearances and the dropping of the suit against the new directors quickly led to bitter feuding about the status of a cross claim which has been filed by the Goldhar group of directors against J. Bradley

Streit and other members of the succeeding board of Ridgeway. Ultimately, however, an order was entered which granted a partial summary judgment of dismissal as to the claims asserted by plaintiff against the directors of Ridgeway in office after September 28, 1956, which order appears to have been confirmed by a later order of May 8, 1964. Finally, on July 22, 1964, a third order was entered which recognized the aforesaid cross claim as moot in view of the earlier dismissal of the complaint against the so-called new directors and proceeded to dismiss it.

Plaintiff's claim against the defendant Universal Products Company, Inc. having been settled on July 19, 1965, after a hearing on notice to stockholders, matters moved steadily towards preparation for trial of the remaining issues, depositions having been taken during this period and the question of the extent of the admissibility of certain depositions having been resolved after argument.

In early September, 1965, however, the defendants Donnell & Mudge, Ltd. and Associated Artists Production Corp. moved for summary judgment of dismissal of the complaint as to them on the grounds that the undisputed material facts of record indicated that plaintiff, having failed prior to bringing suit to make a demand on the board of directors of Ridgeway for correction of the alleged corporate injuries of which he complains, that he accordingly has no standing to prosecute the present action. In support of the Donnell & Mudge motion, excerpts from the August 18, 1965 deposition of James H. Buchanan, a director of Ridgeway at the time suit was filed, were relied on to demonstrate that he and other members of the board of Ridgeway as and after September 28, 1956 were not dominated by the Goldhar group, and that he personally would have investigated and thereafter, if warranted, insisted that valid claims be asserted against the old directors and their corporate interests had such claims been brought to his attention as a member of the board of Ridgeway. Such motions having come on for argument were thereafter denied, the Court being of the opinion that the facts concerning the alleged futility of demand must be heard and the issue raised by the motions was set down for hearing.

In the case of *Townsend Corporation v. Davidson,* 40 *Del.Ch.* 295, 181 *A.2d* 219, the corporation for whose alleged benefit an action had been derivatively commenced by a stockholder was permitted to be realigned as a plaintiff, the stockholder plaintiff thereafter dropping out of the case. In *Lutz v. Boas,* 39 *Del.Ch.* 585, 171 *A.2d* 381, again a derivative action, the corporate defendant for whose benefit the original stockholder plaintiff sued, was realigned as a plaintiff, counsel for the corporation thereafter being given primary control of the case. In New York, however, a distinction is apparently made between the outright substitution of the nominal corporate defendant for the stockholder plaintiff, *Lazar v. Merchants' National Properties, Inc.,* 22 *A.D.2d* 253, 254 *N.Y.S.2d* 712, and a situation in which it is sought to realign such corporation with the stockholder plaintiff, *General Investment Corporation v. Addinsell,* 255 *App.Div.* 319, 7 *N.Y.S.2d* 377. In the latter instance the plaintiff stockholder is dropped as a party, the New York courts finding it anomalous for a stockholder to be allowed to remain in an action in which the corporation, being the real party in interest, has elected to itself seek recovery on its own behalf. In this Court, however, a stockholder has been permitted to intervene in a corporate opportunity suit brought by a corporation against its chief executive officer in order to assure vigorous prosecution of the claim asserted, *Equity Corporation v. Milton,* — *Del.Ch.* —, 213 *A.2d* 439. The federal cases of *Smith v. Sperling,* 354 *U.S.* 91, 77 *S.Ct.* 1112, 1 *L.Ed.2d* 1205, and *Swanson v. Traer,* 354 *U.S.* 114, 77 *S.Ct.* 1116, 1 *L.Ed.2d* 1221, on the other hand, are concerned with diversity of citizenship and jurisdiction and not with the question of whether or not a demand on directors was necessary. In the *Sperling* case the majority opinion stated:

> "This is a corporate cause of action brought by a stockholder. Whether it is a proper case for assertion by a stockholder of that cause of action is not the question here. Such was the problem involved in *Hawes v. City of Oakland,* 104 *U.S.* 450, 26 *L.Ed.* 827, upon which so much reliance is placed in supporting the court below. Here we assume that this corporate cause of action may be enforced by a stockholder".

■ No such assumption can be made here and the above cited cases, in my opinion, do not help to resolve the question before the Court, diversity and jurisdiction not being the issues to be decided. On the basis of the Delaware precedents I believe that the dissolved Ridgeway Corporation through its statutory trustees should be permitted to be aligned as a plaintiff if it can be demonstrated that such trustees have the broad statutory power to take such action, and, if so, that they are not guilty of laches in taking the position ultimately asserted by them many years after suit was filed, or are otherwise disqualified to maintain this action. Some explanation for their apparently inconsistent past behavior is due the Court.

■■ The General Corporation Act of Michigan § 450.75 provides that all dissolved corporations:

"* * * shall nevertheless continue to be bodies corporate for the further term of 3 years from such * * * dissolution * * * for the purpose of prosecuting and defending suits for or against them * * * but not for the purpose of continuing the business for which such corporations were organized: Provided, That with respect to any action, suit or proceeding begun or commenced by or against the corporation prior to such * * * dissolution * * * and with respect to any action, suit or proceedings begun or commenced by the corporation within 3 years after the date of such * * * dissolution * * * shall only for the purpose of such actions, suits or proceedings so begun or commenced be continued a body corporate beyond said 3 year period and until any judgments, orders or decrees therein shall be fully executed * * *".

As in most jurisdictions, the above cited Michigan statute governing the affairs of corporations whose charters have been voided in one manner or another has been liberally interpreted in that state, *John J. Gamalski Hardware v. Baird,* 298 *Mich.* 662, 299 *N.W.* 757, 136 *A.L.R.* 1155. The cited case involved a claim of replevin instituted for the purpose of repossession corporate property, such claim having been filed more than three years after the corporation's charter

had been forfeited. The court declined to deprive such corporation of its right "* * * to continue the possession of its property and to conserve the same, by repossessing it by replevin from one who is unlawfully withholding possession thereof from its lawful owner * * *". In other words, while the so-called statutory death of a corporation in Michigan clearly prevents any continuation of its normal business as well as the instituting of a new suit, such as one to enjoin the use of a trade name once owned by a corporation whose charter has been voided, *Grand Rapids Trust Co. v. Haney School Furniture Co.*, 221 *Mich.* 487, 191 *N.W.* 196, 27 *A.L.R.* 1020, it does not prevent the prosecution of an action which is directly related to the process of winding up corporate affairs. In the last cited case, the court said: "There must be a running plant and the probable retention of customers to constitute good will * * *", it being pointed out that the corporation no longer existed for any business purpose. While the present action seeks an accounting and other equitable relief, it appears to me that what is basically sought is the recovery of moneys and other property allegedly belonging to Ridgeway under a claim instituted on its behalf in 1957. No attempt is being made to continue the corporate business or to institute a new cause of action. In fact, what appears to be sought is the taking over of a long pending claim, which, if successfully prosecuted, would represent a significant step in an orderly liquidation. Furthermore, I fail to see any distinction between the voiding of a charter by dissolution as opposed to some form of forfeiture. Therefore, I am of the opinion that the trustees are not bound by the three-year statutory period of the Michigan law and may prosecute the pending action if they are not guilty of laches or otherwise disqualified from taking their present stand. Accordingly, it is unnecessary to consider whether or not the action can be considered to have been technically commenced as to them when plaintiff filed his suit in 1957.

This does not mean, however, that such trustees being only two in number out of what was a much larger board at the time suit was filed by the plaintiff stockholder may not have acted too late or that the two trustees who filed the pending motion necessarily had the authority to do so. Furthermore, on the issue of

laches, defendants must be prepared to show that they are not estopped to complain of the trustees' belated motion because of their acquiescence in the trustees' November 16, 1962 appearance and their participation without objection to the trustees' status in the settlement of plaintiff's claim against Universal.

The several issues thus raised are directly related to that of the failure of the original plaintiff stockholder to make demand on the new directors of Ridgeway either prior to bringing suit or later when he concluded that they could not be held guilty of breaches of fiduciary duty to their corporation. Such issues cannot, in my opinion, be determined on the present record but rather after a hearing at which the trustees will no doubt testify.

In short, I decline to permit the trustees who make the pending motion to be realigned as parties plaintiff prior to trial. The appearing trustees' motion to be realigned as parties plaintiff is denied without prejudice. Their motion to delete from the action the name of J. A. Hackett deceased as a trustee of Ridgeway Corporation is granted.

Order on notice.